# United States District Court
## Western District of Virginia
### Harrisonburg Division

| | |
|---|---|
| **MELISSA BRADLEY** <br> **o/b/o L.R.B.,** a minor child, <br><br> *Plaintiff*, <br><br> v. <br><br> **CAROLYN W. COLVIN,**[1] <br> Commissioner of Social Security, <br><br> *Defendant* | Civil No.: 5:12cv00074 <br><br><br> **REPORT AND** <br> **RECOMMENDATION** <br><br><br> By: Hon. James G. Welsh <br> U. S. Magistrate Judge |

Melissa Bradley brings this civil action on behalf of L.R.B., ("the plaintiff"), a child under the age of eighteen, challenging a final decision of the Commissioner of the Social Security Administration (the "agency") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, as amended (the "Act"), 42 U.S.C. §§ 1381 *et seq.*; 20 C.F.R. § 416.1481. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The record shows that the application was protectively filed on August 21, 2009, alleging a disability beginning *xxxxx*, *xx*, 1997, when the child was zero years of age. (R. 10, 122). The

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013; pursuant to Rule 25(d), Fed. R. Civ. P., she is substituted for Michael J. Astrue as the defendant in this suit. No action is needed to continue it by reason of the last sentence of 42 U.S.C. § 405(g).

claim was denied initially, on state agency reconsideration, and following an administrative hearing held on March 2, 2011. (R. 10-23, 28-55, 56-57, 59-61, 65-67, 73-79, 81-83, .72-79, 95, 101, 118). [2] The unfavorable written decision of the administrative law judge ("ALJ") was issued on May 16, 2011; the plaintiff's timely request for Appeals Council review was denied on May 21, 2012 (R.1-3, 5), and the unfavorable written decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with her Answer (docket #7) to the plaintiff's Complaint (docket #3), the Commissioner has filed a certified copy of the Administrative Record (docket #8), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. The parties have filed motions for summary judgment with supporting memoranda; oral argument was conducted by telephone on these motions on June 6, 2013 (docket #18). By standing order this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    Standard of Review**

The court's review in this case is limited to determining whether the factual findings of the Commissioner are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of evidence. *Laws v. Celebrezze*,

---

[2] "R." refers to the certified record of administrative proceedings relating to this case.

368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642). The court is "not at liberty to re-weigh the evidence … or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

II.     **The ALJ's Decision**

The ALJ, in his written decision (R. 13-23), found that L.R.B., a female child, was born in 1997, that she was of school age at the time her SSI application was filed, and that she was an adolescent [3] at the time of the administrative hearing. (R. 13). He determined that her anxiety disorder and Asperger syndrome [4] were both severe [5] impairments; however, he further found that these impairments did not meet or medically equal a listed [6] impairment, nor did she have an impairment or combination of impairments that functionally equaled the listings pursuant to 20 C.F.R. §§ 416.924(d) and 416.926a. (R. 13-22). It was his conclusion that the plaintiff had a

---

[3] "Age group descriptors—(v) Adolescents (age 12 to attainment of age 18)." 20 C.F.R. § 416.926a(g)(2)

[4] Asperger syndrome, also known as Asperger disorder, is a pervasive developmental disorder resembling an autistic disorder that is characterized by significant difficulties in social interaction and nonverbal communication, along with restricted and repetitive patterns of behavior, interests and activities. *Dorland's Illustrated Medical Dictionary* 1821-1822 (32nd ed. 2012); Am. Psychiatric Assn., *Diagnostic and Statistical Manual of Mental Disorders* § 299.80 Asperger's Disorder, 80-84 (4th ed. 2000) ("DSM-IV").

[5] A *severe* impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[6] The Listing of Impairments ("the Listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. It describes for each of the major body systems impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925.

3

less than marked limitation [7] in only two domains [8] – Interacting and Relating to Others and Self Care – and was, therefore, not disabled within the meaning of the Act. (R. 17-23).

III.   **Summary and Recommendation**

On appeal and at oral argument the plaintiff's attorney argues that the ALJ's adverse determination is not supported by substantial evidence in three particulars. [9] He argues that the ALJ erred by failing first "to assess the child as a 'whole'" as required by 20 C.F.R. § 416.924(a); second, he argues that the ALJ erred by "ignoring" the hearing testimony of the child's father that was based on his "'daily' observations of the child's devastating impairments," and as a third claim of error on appeal, plaintiff's attorney argues that the ALJ also erred by "ignoring" the longitudinal record of the child's treatment for anxiety and her attendant functional limitations. (Docket #13 pp 3-10). After reviewing all of the evidence of record, including both the medical evidence and testimony, and for the reasons discussed below in relation to these arguments, it is **RECOMMENDED** that the Commissioner's decision be

---

[7]   A child is disabled under the Act if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). As part of the multi-step decisional process, if the ALJ determines that the child has a medically determinable impairment that is severe, he must then compare how appropriately, effectively, and independently the child performs activities compared to performance of other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). In doing so, he must ascertain which of the six domains of functioning are implicated and rate the severity of the limitations in each affected domain. SSR 09-01p." His technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

[8]   Domains are the six "broad areas of functioning intended to capture all of what a child can or cannot do," Social Security Ruling ("SSR") 09-01p, and they include: (1) Acquiring and Using Information; (2) Attending and Completing Tasks: (3) Interacting and Relating to Others; (4) Moving About and Manipulating Objects; (5) Self-Care; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1).

[9]   At oral argument plaintiff's counsel withdrew a previously asserted disability claim based on Osgood-Schlatter Disease.

4

**AFFIRMED**, the Commissioner's motion for summary judgment be **GRANTED**, the plaintiff's motion for summary judgment be **DENIED**, and this case **STRICKEN** from the docket of the court.

## IV. Evidence Summary

*Age & Education*

L.R.B., a minor child, was born in 1997. (R.32, 256). She was fourteen years of age and in the eighth (her age-appropriate) grade at the time of the administrative hearing. (R. 32. *See also* R. 129-130, 213, 375). She has at least an average IQ. In their response to a teacher questionnaire dated November 9, 2009, four of L.R.B.'s teachers jointly reported that the child academically performed at or above grade level, and in comparison with other same-age children, she demonstrated no problems in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Self Care. [10] (R. 145, 213-216; *see also* R.147-177).

*Medical & Mental Health*

The plaintiff's pediatric care records for the period between 2004 and the end of 2008 document her medical treatment for general wellness issues and for several transient medical problems. (R. 339, 343, 357-374). Additionally, they show that as an adjunct to her sister's mental health treatment, the plaintiff also saw a social worker at Augusta League of Therapies on a more or less weekly basis between March 20 and July 7, 2008 for difficulties she then experienced with sibling and family-related stressors. (R. 309-312, 314-329). Although her

---

[10] These teachers did not assess the child's level of functioning in the domain of Moving About and Manipulating Objects, and in the domain of Health and Physical Well-Being, they noted only that the child's vision was corrected with glasses. (R. 217, 219).

family, by history, reported concerns that the plaintiff was also experiencing school socialization and performance issues, the social worker opened no treatment file, made no assessment of L.R.B.'s development; moreover, she found L.R.B. to be "engaged," to display good hygiene, to express herself verbally with accuracy, to demonstrate "a need to be structured and purposeful in her approach to therapeutic activities," and to exhibit generally a "positive mood and matching affect." (R.309-312).

Eight months later, in March 2009 her parents reported their concerns about L.R.B.'s anxiety and/or "lack of desire to socialize" to her pediatrician, which led on referral to a diagnosis of Asperger syndrome by Dr. Kenneth Norwood at University of Virginia Medical Center ("UVaMC") and to the establishment of a treatment regime in July 2009 that included an anti-depressant (Zoloft), a six-month period of counseling to address her symptoms of worry and social coping skills, and to periodic medication management and status follow-ups through UVaMC's Child & Family Psychiatry Clinic ("C&FP Clinic"). (R. 335-338, 340-341, 353, 356, 358, 376-382, 390-403, 410-415).

In January 2010, following the plaintiff's referral to the C&FP Clinic for further evaluation of her anxiety, her parents reported that her condition had been "somewhat help[ed] by the medication, but they were concerned that she was having panic attacks after eating certain foods or when she was in a crowded areas with loud noises and that she was at times having crying spells after school. (R. 379). Her mental status examination at the time was essentially normal, and the examining psychiatrist, Adrienne Turner, MD, assessed L.R.B. to be functioning

at level 70 on the GAF scale. [11] (R. 381). The following month, L.R.B.'s mood was assessed at 7-8 out of 10, and in April she reported that her anxiety was under better control, but she was still having some irritability and sensitivity at school. (R.377-378). When Dr. Turner next saw the plaintiff at the end of the year (in November and for a follow-up office visit in December), she found L.R.B. to be well-groomed and to exhibit appropriate behavior, normal speech, intact thought processes and an appropriate affect. (R.411, 413). On both occasions the plaintiff reported that she was being home schooled by her parents, that Zoloft was helping to control her anxiety, and that she was bored and missed the socialization of school. (R. 410, 413).

*State Agency Psychological Assessments*

Twice in 2010 the plaintiff's childhood disability claim and medical record were reviewed, analyzed, and her limitations evaluated in each of the six functional domains. (R, 239-245, 267-274). In March, Sandra Francis, PhD, the reviewing psychologist considered the plaintiff's autistic disorder under Listing 112.10 and her anxiety disorder under Listing 112.06. (R. 242-243). She concluded that the medical record demonstrated functional limitations in the domain of Interacting and Relating with Others and that the reports of the child's parents demonstrated functional limitations in the Self Care domain. (R.243). As to each of these domains, this state agency psychologist assessed the impairment to be of "less than marked" severity and, therefore, she concluded that L.R.B.'s condition did not functionally equal a listed

---

[11] "A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. Am. Psychiatric Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000)." *Jackson v. Colvin*, 2013 U.S. Dist. LEXIS 102148, *6 (WDVa. Jul. 22, 2213).

7

impairment. [12] Reviewing the updated medical record in July, Nicole Sampson, PhD, a second state agency psychologist, for the same reasons came to the same non-disability conclusion. (R. 271-273).

*Testimony*

At the March 2, 2011 administrative hearing, L.R.B.'s father testified that he and his wife "had no choice but to remove" the child [from public] school and homeschool her because her "[a]nxiety started to rise … and her [increased] nervous and panic attacks." (R. 32-33). He also testified that the plaintiff had a history of conflict with her teachers, that she chewed on her fingernails and toes, that she did not care about her personal hygiene, that her "social graces ha[d] fallen—very severely," that she had "very limited coping skills," that she did not know how "to pick-up on social cues or even learn to socialize," and that her parents had worked "really hard with her in the last couple of years to keep her grades up." (R.34-39, 47).

## V.   Analysis

As noted above, the ALJ evaluated the plaintiff's claim using the three-step sequential process for claims involving childhood SSI, as set forth in 20 C.F.R. § 416.924. After finding that L.R.B. had not engaged in any substantial gainful activity at any relevant time (R. 13), at the second decisional step he found that she suffered from the *severe* impairments of Asperger syndrome and an anxiety disorder. (*Id*.). Based on his review and consideration of the entire record, at the third decisional step he concluded that L.R.B. did not have an impairment or combination of impairments that met, medically equaled or was functionally equivalent to any

---

[12] "By 'functionally equal the listings,'[the agency] mean[s] that [the claimant's] impairment(s) must be of listing-level severity; *i.e*., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. 416.926a(a).

listing (*Id.*), and on these findings he further concluded that L.R.B. was, therefore, not entitled to receive SSI benefits. (R. 22-23).

**A.**

On appeal the plaintiff argues that the ALJ "neglect[ed] to assess [her] as a 'whole'" before undertaking a functional equivalency analysis utilizing the six broad domains of functioning. As she correctly points-out, "where there is factual support that a listing could be met," the ALJ must fully analyze whether those impairments meet or equal a listing. *See Cook v. Heckler*, 783 F.2$^d$ 1168, 1172 (4th Cir. 1986). More specifically, when an ALJ finds that a claimant has a severe impairment and the record contains evidence of related "symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] … explain the reasons for the determination that [the claimant's severe impairment] did not meet or medically equal a listed impairment." *Id*.

Despite the plaintiff's assertion to the contrary, in the instant case, the ALJ did exactly that. He identified L.R.B.'s relevant impairments. (R. 13). He found that "no treating or examining medical source had identified any medical signs or findings that m[et] or equal[ed] a listing." (*Id.*). Then, based on their expertise in disability evaluation matters, he adopted the assessments of L.R.B.'s impairments and limitations made by the state agency psychologists. (*Id.*). *See* 20 C.F.R. §416.927(e)(2)(i). And after reviewing the medical record, including medical information submitted after the state agency psychologists completed their assessments, he further concluded that "not[hing] warrant[ed] a different determination." (*Id.*). The ALJ, therefore, in fact made the requisite consideration of all relevant evidence in L.R.B.'s case

record. He appropriately relied on the opinions of state agency reviewers.[13] In combination with other evidence, he made his determinations regarding the nature and extent of L.R.B.'s mental impairments; he made these determinations on the basis of substantial evidence, and he made them in compliance with 20 C.F.R. § 416.924(a).

**B.**

As a separate assignment of error by the ALJ, the plaintiff attacks the ALJ's assessment of her father's credibility. Citing 20 C.F.R. § 416.924a(2)(i) as support for this contention, her attorney argues that the ALJ inappropriately ignored the agency's express endorsement of parent testimony as an important source of information because "they usually see [the child] daily." If the decisional importance of her father's testimony concerning the intensity, persistence and limiting effects of her condition had been acknowledged, according to her attorney, the ALJ would have concluded that the plaintiff's functional limitations in the domains of Attending and Completing Tasks, Interacting and Relating with Others, and Self Care were significantly more limiting and, therefore, presumably would have dictated a disability finding by the ALJ.

In addressing this issue, it must be noted at the outset that the Fourth Circuit requires a reviewing court to give great deference to an ALJ's credibility determinations and assess them only as to whether they are supported by substantial evidence. *Eldeco, Inc. v. NLRB*, 132 F.3$^d$ 1007, 1011 (4th Cir. 1997). Thus, an ALJ's credibility determination "should be accepted by the reviewing court absent exceptional circumstances." *Id*. (quoting *NLRB v. Air Products &*

---

[13] State agency physicians and psychologists are deemed by agency regulations to be "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i).

*Chemicals, Inc*., 717 F.2ᵈ 141, 145 (4ᵗʰ Cir. 1983). *See also Bieber v. Dep't. of the Army*, 287 F.3ᵈ 1358, 1364 (Fed. Cir. 2002) ("credibility determinations of an ALJ are virtually unreviewable on appeal"); *Pope v. U.S. Postal Service*, 114 F.3ᵈ 1144, 1149 (Fed.Cir. 1997) (reviewing courts "are not in a position to re-evaluate … credibility determinations, which are not inherently improbable or discredited by undisputed fact"). Giving this required deference to a credibility finding, it is obvious both from the medical and the educational record in the instant case that as a whole the ALJ's credibility assessment is neither unreasonable nor contradicted by other findings made by the ALJ.

Moreover, the ALJ's credibility determination is consistent with the two-step process required by the agency's regulations for evaluating the credibility of an individual's claims regarding her symptoms. *Craig v. Chater*, 76 F.3ᵈ 585, 594 (4ᵗʰ Cir. 2001). He first determined that the plaintiff suffers from impairments that could be reasonably expected to produce the alleged symptoms. (R. 14). Then, in accordance with the second part of this analysis, he evaluated the father's statements about the intensity and persistence of L.R.B.'s symptoms and their functional consequences. In doing so the ALJ appropriately also took into account "comments in progress notes … that support some of the allegations of the claimant's father;" including *inter alia* the child's need for perfection that inhibited her ability to accomplish tasks at a reasonable pace, her need for a structured and purposeful approach to therapeutic activities, the anger and moodiness she displayed on one occasion in late January 2010 and her display of signs of morbid depression on another occasion. (R. 15). Likewise, the ALJ appropriately took into account evidence in the record that did not support the child's father, including *inter alia* the GAF 70 functional assessment by Dr. Turner in January 2010, the generally mild symptomology

associated with an anxiety NOS diagnosis, the child's history of attending school regularly and being an average to above-average student, and the child's independence in all daily living activities. (R. 15).

In summary, the ALJ's partial acceptance and his partial rejection of the testimony provided by the child's father on various topics were supported by substantial evidence. The ALJ followed the controlling agency regulations, and there simply was no decisional error by the ALJ. 20 C.F.R. § 416.929. *See Craig* at 594-596.

## C.

On appeal, the plaintiff additionally argues that the ALJ erred by "ignoring" her longitudinal medical history of treatment for (what her attorney described as) "pervasive" anxiety and its attendant functional limitations. To support this contention, she references multiple clinician entries in the child's multi-year treatment record that note L.R.B.'s anxiety-related difficulties, including *inter alia* her "need for perfection," her "difficulty" with peer relations and school performance demands, her need for structure and clear purposefulness, her need for "control and order" in an "unpredictable and chaotic" family structure, her "rigid way of looking at the world," her self-isolation that "may be indicative of anxious emotions," poor eye contact, reported withdrawal and "periods of panic-like" behavior in social settings, a lack of friends, and a July 2009 entry that described her anxiety as "quite pervasive and … having a significant impact on [her] functioning. (Docket # 13, pp 5-6 and 7-9). If fully and fairly

considered, it is argued, this "laundry list" of functional difficulties demonstrates extreme limitations in the domain of Interacting and Relating and thus compels a disability finding.

Countering this claim of error, Commissioner argues that the ALJ discussed L.R.B.'s anxiety disorder at length. She expressly notes the ALJ's acknowledgment of the fact that some of the comments in the Augusta League of Therapists clinician notes were supportive of the plaintiff's disability claim. (R.15). However, to the contrary the Commissioner also notes the ALJ's recognition that some of the same records indicated that L.R.B. was "usually talkative" with her therapist and only "became withdrawn in family sessions once attention was focused on her," the ALJ's conclusion that overall these clinician notes "suggested no more than moderate" symptoms, the ALJ's acceptance of Dr. Turner's finding that L.R.B. demonstrated an ability to engage, answer appropriately and make eye contact, the ALJ's decisional reliance on Dr. Turner's assessment of L.R.B.'s overall level of functioning (GAF:70) and "anxiety NOS" diagnosis that suggested no more than mild symptoms, and the ALJ's adoption of the state agency psychologists' assessments of L.R.B.'s "less than marked" limitations in the domain of Interacting and Relating with Others and in the domain of Self Care . (R. 15-16, 19).

The court, therefore, is constrained to conclude that the ALJ's determination of this issue too is supported by "substantial evidence." 42 U.S.C. § 405(g) ("The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive."). Had the court served as the initial fact finder in this case, it may well have resolved the conflicts

in the evidence in a different manner; however, the court's role is not to second guess, if the Commissioner's factual determinations are supported by "substantial evidence," those determinations must be affirmed even if the court might have decided the question differently. *Richardson v. Perales*, 402 U.S. 389, 400 (1971).

VI.     **Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The plaintiff was born in 1997; she was a school-age child on the date her SSI application was filed, and she was an adolescent at the time of the ALJ's written decision (20 C.F.R. § 416.926a(g)(2)(iv)-(v));

2. The plaintiff has not engaged in substantial gainful activity since the date of her application (20 C.F.R. §§ 416.924(b) and 416.971 *et seq*.);

3. The plaintiff has the following severe impairments: Asperger syndrome and an anxiety disorder (20 C.F.R. §§ 416.924(c));

4. The plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926a);

5. The plaintiff does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. §§ 416.924(d) and 416.926a);

6. The ALJ's determination that L.R.B. has no limitation in the domain of Acquiring and Using Information is supported by substantial evidence;

7. The ALJ's determination that L.R.B. has no limitation in the domain of Attending and Completing Tasks is supported by substantial evidence;

8. The ALJ's determination that L.R.D. has *less than marked* limitation in the domain of Interacting and Relating with Others is supported by substantial evidence;

9. The ALJ's determination that L.R.B. has no limitation in the domain of Moving About and Manipulating Objects is supported by substantial evidence;

10. The ALJ's determination that L.R.B. has *less-than-marked* limitation in the domain of Self Care is supported by substantial evidence;

11. The ALJ's determination that L.R.B. has no limitation in the domain of Health and Physical Well-Being is supported by substantial evidence;

12. The ALJ's witness credibility assessment is supported by substantial evidence;

13. The plaintiff has not been disabled, as defined in the Social Security Act, from the date her application was filed through the date of the ALJ's decision (20 C.F.R. § 416.924(a));

14. Substantial evidence in the record supports the Commissioner's final decision, and it is free of legal error;

15. The plaintiff has not met her burden of proving a disabling condition on or before the decision date; and

16. The final decision of the Commissioner should be affirmed.

## VII. Transmittal of the Record

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VIII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as

to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 12th day of August 2013.

*/s/ James G. Welsh*
United States Magistrate Judge